Patrick X. Fowler (#012144)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: pfowler@swlaw.com
*Attorneys for Defendants Mallinckrodt Inc. and Mallinckrodt LLC*

Devin K. Ross (*Pro Hac Vice*)
Robert T. Adams (*Pro Hac Vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: (816) 474-6550
Fax: (816) 421-5547
dkross@shb.com
rtadams@shb.com

*Attorneys for Defendants Mallinckrodt Inc. and Mallinckrodt LLC*

*Additional Counsel Listed on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan Fischer,<br>Plaintiff,<br>v.<br>Bayer Healthcare Pharmaceuticals Inc., et al.,<br>Defendants. | No. 2:18-cv-01778-DGC<br><br>No. 2:18-cv-01157-DGC<br><br>No. 2:18-cv-01159-DGC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE GENERAL CAUSATION OPINIONS OF KENNETH N. RAYMOND, PH.D.**<br><br>**Oral Argument Requested** |
| Hilary Davis,<br>Plaintiff,<br>v.<br>McKesson Corporation, et al.,<br>Defendants. | |
| Srihari Munnuru,<br>Plaintiff,<br>v.<br>Guerbet, LLC, et al.,<br>Defendants. | |

4851-7653-8775

## INTRODUCTION

The issue before the Court is "whether ***exposure to gadolinium*** in the manner at issue in this case ***is capable of causing the injuries and conditions alleged by Plaintiffs***." *See* Doc. 11, Order (emphasis added). The Court's general-causation directive was to focus on ***clinical effects***, not ***chemical properties***. Is the chemistry of these agents and their chemical properties, including the relative stability of macro and linear agents generally well accepted? Yes. In contrast, is the assertion that these agents cause a new and heretofore unrecognized disease process established? No, not even close. Dr. Raymond's abundant admissions in his deposition leave no doubt about that he offers no admissible opinions on general causation.

Plaintiffs' assertion that Dr. Raymond's opinions as a chemist are relevant despite admitting that he cannot answer "the **entire** general causation question" is of little help without informing the Court of what part of that question he can answer. *See* Doc 113 at 5 (emphasis in original). Plaintiffs' briefing defends his role by noting his expertise "in how GBCA's are chemically structured, how they function, and how they can de-chelate once introduced into the body, thereby releasing 'free gadolinium'" *Id.* at 4. With all due respect, this is not the question the Court directed the Parties to answer. Further, Plaintiffs make no effort to explain Dr. Raymond's admission—which <u>is</u> directly on point with the Court's question—that "[a]t this time there is no direct evidence" supporting general causation. Ex. A, Raymond Dep. 103:2, Mar. 1, 2019.

Plaintiffs' reference to Dr. Raymond's prior involvement in the NSF litigation is misleading and irrelevant to the Court's *Daubert* inquiry here. Plaintiffs failed to inform the Court that counsel in the NSF litigation agreed by stipulation that Dr. Raymond would **not** be offering general causation opinions—the very opinions they would have him offer in these cases. *See* Ex. B, Joint Stipulation and Order on *In re; Gadolinium Based Contrast Agents Products Liability Litigation*, MDL No. 1909, Case No. 1:08-gd-50000 (N.D. Ohio Dec. 11, 2009), at 2-3. Further, the NSF case mentioned by Plaintiffs did not involve the issue of whether the GBCA at issue could cause the myriad of complaints at issue in these

4851-7653-8775

cases, which include only individuals who have normal renal function. Dr. Raymond's role in a different litigation with different issues should not bear on this Court's analysis.

## ARGUMENT

### 1. Dr. Raymond's general causation opinions go beyond his area of expertise and should be excluded.

Plaintiffs would have this Court believe that Dr. Raymond is merely a chemist offering opinions related to the chemistry of GBCAs. This is simply not correct. While Dr. Raymond's report discusses chemistry principles, it also offers vague, unsupported clinical opinions related to issues including "toxic side effects," "symptoms," and "Gd toxicity disease" that go beyond his area of expertise and should be excluded. *See* Ex. C, Dr. Raymond Expert Report at 10-11.

While Plaintiffs' Opposition attempts to blur the line between Dr. Raymond's chemistry opinions and his clinical general causation opinions, it cannot reverse Dr. Raymond's own admissions that the general causation question posed by the Court is beyond his area of expertise:

> **Q.**: … I just want to confirm that you're not offering opinions that retained gadolinium causes any specific symptom in patients, correct? That would be beyond your expertise?
>
> **A.**: It would.

Ex. A, Raymond Dep. 121:1-5.

> **Q.**: …So the next sentence says, "The causal relationship between GBCA exposure, retention and symptoms remains unclear due to inconsistencies in the timing of symptom onset relative to GBCA administration, dose thresholds and heterogeneity in presumed associated symptoms." You agree with that statement?
>
> **A.**: To the extent that it's areas I cover, yes, I do.
>
> …
>
> **Q.**: That's a very clinical statement, correct?
>
> **A.**: It is.
>
> **Q.**: And that's essentially beyond your area of expertise?
>
> **A.**: Yes.

- 3 -

4851-7653-8775

*Id.* 114:3-19.

Dr. Raymond clearly admits that he cannot assist the Court on the very question the parties have been instructed to answer. Because this inquiry goes beyond Dr. Raymond's area of expertise, his general causation opinions should be excluded. *See, e.g., In re Silicone Gel Breast Implants Prods. Liab. Lit.*, 318 F. Supp. 2d 879, 901-02 (C.D. Cal. 2004) (holding chemist "is not qualified to testify that [chemical] is a probable human carcinogen or that [chemical] that may have been released from [plaintiff's] implants caused her breast cancer").

2. **Dr. Raymond's general causation opinions are not reliable and should be excluded.**

a. **Dr. Raymond admitted that causation has not been established.**

As noted above, Dr. Raymond admits that "[a]t this time there is no direct evidence" supporting general causation, and that causation has not yet been established. Ex. A, Raymond Dep. 103:2; 70:7-15 ("It's in the process [of being established]."). This is fatal to Dr. Raymond's continued role. The courts are uniform in their agreement that these kinds of opinions are inherently unreliable. *See, e.g.*, *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1340 (11th Cir. 2010) (affirming exclusion of expert who admitted that "[f]uture research is required to determine the cause, and proper prevention, of shoulder chondrolysis"); *Rosen v. Cibar-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996); *accord Perry v. Novartis Pharm. Corp.* 564 F. Supp. 2d 452, 468 (E.D. Pa. 2008) ("The Courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it.").

b. **Dr. Raymond's opinions are not reliable or helpful to the jury.**

Plaintiffs did not address the specific deficiencies in Dr. Raymond's opinions raised in Defendants' Motion. For instance, while Dr. Raymond opines that retained GBCAs can cause injuries to patients with normal kidney function, he could not identify *any* specific adverse clinical health effects caused by retained gadolinium. Ex. A, Raymond Dep. 43:14-21 ("Q: So your report does not identify any specific symptoms that a patient might have from retained gadolinium, correct? A: No specific symptoms."). In spite of this critical gap,

4851-7653-8775

Dr. Raymond's opinions appear predicated on the view that gadolinium is, somehow, toxic. Doc. 113 at 6. ("[e]ven in patients with normal kidney function de-chelated Gd is toxic to humans ..."). But Dr. Raymond is not, nor is he offered as, a toxicologist.[1] Still, even if he were so qualified, these opinions would demand a basic understanding of exposure levels as part of a toxicity determination, which Dr. Raymond agrees is "critically important." Consider what Dr. Raymond admitted he doesn't know:

- the amount of gadolinium required to cause any particular adverse effect, Ex. A, Raymond Dep. 47:15-22;
- the "specific level of gadolinium that must be retained in an individual in order to have a toxic effect[,]" *id.* at 72: 9-14;
- the amount of gadolinium required to have a clinical adverse effect, *id.* 127: 25-128:4;
- injuries reported in Plaintiffs' medical records or by Plaintiff's in their sworn testimony, *id.* 28:10-12; and
- the manner of exposure alleged by these Plaintiffs, *see generally*, Ex. C, Dr. Raymond Expert Report.

Further, Dr. Raymond offers the opinion that more gadolinium is released or retained from linear agents than from macrocyclic agents, but could not quantify that amount. Ex. A, Raymond Dep. 139:2-3 ("If I had a number in mind, I would have stated the number."). This is particularly relevant because Dr. Raymond also admitted that gadolinium is released and retained following administration of macrocyclic agents, which, according to Dr. Raymond, are safe. *Id*. 36:25-37:1-3 ("Q: As a chemist, is it your opinion that macrocyclic

---

[1] Yet Dr. Raymond's deposition testimony suggests this is precisely the type of unsupported opinion testimony he intends to offer at trial. Doc. 113 at 3 ("Lanthanides are all toxic if injected in the body ..." (opinion delivered in the NSF litigation)); *id.* at 6 ("toxic material should not be present in the body"); *id.* ("Q: and when the gadolinium attaches to something [else] in the body, it's free of its chelate...does that make the gadolinium safe? A: No, that makes it toxic. You don't want gadolinium in your body ..."). These opinions go well beyond Dr. Raymond's purported expertise "in how GBCAs are chemically structured, how they function, and how they can de-chelate once introduced into the body, thereby releasing 'free gadolinium' that is available to bind with tissue and organs." *Id.* at 4.

4851-7653-8775

GBCAs do not release gadolinium in vivo? A: They release it much more slowly than linear GBCAs."); 113-114 (agreeing, "all agents, linear and macrocyclic, demonstrate some degree of tissue retention").

In sum, Plaintiffs would present Dr. Raymond as a general causation expert notwithstanding his inability to identify any specific symptoms he believes are caused by retained gadolinium, or the amount of gadolinium retained following GBCA administration, or the threshold amount of retained gadolinium required to cause any adverse clinical effects. Courts have consistently excluded such opinions as unreliable and unhelpful to the jury. *See, e.g.*, *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1162, 1165-66 (E.D. Wash. 2009) ("[C]ourts have . . . rejected expert opinions that are based on the 'no-threshold' model" that causation can occur "in any dose."); *See Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 992 (D. Ariz. 2000) ("[W[here experts propose that breast implants cause a disease but cannot specify the criteria for diagnosing the disease, it is incapable of epidemiological testing[, which] renders the experts' methods insufficiently reliable to help the jury.").

3. **Plaintiffs' references to Dr. Raymond's involvement in the NSF litigation is misleading and irrelevant.**

Plaintiffs argue that because Dr. Raymond was permitted to testify in a trial involving a different GBCA, a different defendant, and a different disease (*i.e.* NSF), he should be permitted to offer opinions here without further scrutiny. Plaintiffs imply that Dr. Raymond's opinions have already passed *Daubert* muster. This is simply not true.

The *Decker* case referenced in Plaintiffs' Opposition involved GE Healthcare's product Omniscan. Neither GE Healthcare nor Omniscan are involved in these cases. Plaintiffs' Opposition cites to the Sixth Circuit's Order on GE Healthcare's appeal in order to suggest that Dr. Raymond's opinions were challenged under *Daubert* and affirmed. In reality, GE Healthcare and plaintiffs' counsel in that case reached an agreement prior to trial regarding the permissible scope of Dr. Raymond's testimony. Ex. B, at 2-3. As part of that agreement, plaintiffs voluntarily withdrew Dr. Raymond's general causation

4851-7653-8775

opinions—the very opinions Plaintiffs attempt from elicit from him now. *Id.* Plaintiffs' references to Dr. Raymond's involvement in the *Decker* case are misleading and irrelevant to the Court's *Daubert* inquiry in these cases.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court exclude the general causation opinions of Dr. Kenneth Raymond in their entirety.

4851-7653-8775

| | | |
|---|---|---|
| DATED this 17th day of May, 2019. | | SHOOK, HARDY & BACON L.L.P. |

By: *s/Devin K. Ross*
Devin K. Ross (*Pro Hac Vice*)
Robert T. Adams (*Pro Hac Vice*)
2555 Grand Boulevard
Kansas City, MO 64108-2613

Patrick X. Fowler
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

*Attorneys for Defendants Mallinckrodt Inc. and Mallinckrodt LLC*

DATED this 17th day of May, 2019.  GOLDMAN ISMAIL TOMASELLI

By: *s/Jennifer Greenblatt (w/permission)*
Jennifer Greenblatt (*Pro Hac Vice*)
Andrew Goldman (*Pro Hac Vice*)
Allyson Julien (*Pro Hac Vice*)
Goldman Ismail Tomaselli
Brennan & Baum LLP
564 W. Randolph St., Ste. 400
Chicago, IL 60661
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
jgreenblatt@goldmanismail.com
agoldman@goldmanismail.com
ajulien@goldmanismail.com

Ken Baum ((*Pro hac vice*)
Goldman Ismail Tomaselli
Brennan & Baum LLP
429 Santa Monica Blvd., Ste. 710
Santa Monica, CA 90401
Telephone: (310) 576-6900
Facsimile: (310) 382-9974
kbaum@goldmanismail.com

Jeffrey B. Molinar, No. 018512
Joseph N. Roth, No. 025725
Osborn Maledon, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, AZ 85012-2793
Telephone: (602) 640-9000
jmolinar@omlaw.com
jroth@omlaw.com

*Attorneys for Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Corporation, and Bayer Healthcare LLC*

4851-7653-8775

| | | |
|---|---|---|
| DATED this 17th day of May, 2019. | | BAKER STERCHI COWDEN & RICE LLC |

By: *s/Thomas N. Sterchi (w/permission)*
Thomas N. Sterchi (*Pro Hac Vice*)
Paul S. Penticuff (Pro hac vice)
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108
Telephone: (816) 471-2121
Facsimile: (816) 472-0288
sterchi@bscr-law.com
penticuff@bscr-law.com

Donn Alexander (AZ SBN 019389)
Jones, Skelton & Hochuli, P.L.C.
40 North Central Ave., Suite 2700
Phoenix, Arizona. 85004
Telephone: 602.263.1700
Fax: 602.651.7599
dalexander@jshfirm.com

*Attorneys for Defendant Bracco Diagnostics, Inc.*

DATED this 17th day of May, 2019.                      KENDALL LAW PC

By: *s/Jamie L. Kendall (w/permission)*
Jamie L. Kendall (*Pro Hac Vice*)
Brad M. Welsh (*Pro Hac Vice*)
1201 County Line Road – Suite G
Bryn Mawr, Pennsylvania 19010
Telephone: 610.756.0200
Facsimile: 610.756.0202
jkendall@tkfirm.com
bwelsh@tkfirm.com

Christina M. Vitale (#024071)
christina.vitale@morganlewis.com
Morgan, Lewis & Bockius LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
Telephone: 713.890.5764
Facsimile: 713.890.5001

Brian W. Shaffer (*Pro Hac Vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Brian.shaffer@morganlewis.com
Telephone: 215.963.5000

*Attorneys for Defendants Guerbet LLC and Liebel-Flarsheim Company LLC*

4851-7653-8775

DATED this 17th day of May, 2019.   WHEELER TRIGG O'DONNELL LLP

By: *s/Habib Nasrullah (w/permission)*
Habib Nasrullah (*Pro Hac Vice*)
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202
Telephone: (303) 244 1960
Fax: (303) 244 1879
nasrullah@wtotrial.com

*Attorneys for Defendants McKesson Corporation and McKesson Medical-Surgical Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record in this matter.

*s/Kathy Sprinkle*

4851-7653-8775